**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Fernando Gastelum,

            Plaintiff,

v.

Canyon Hospitality LLC,

            Defendant.

No. CV-17-02792-PHX-GMS

**ORDER**

Pending before the Court is the Motion to Dismiss of Defendant Canyon Hospitality, LLC for lack of standing. (Doc. 12). Recently, in *Civil Rights Education and Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093, 1099 (9th Cir. 2017) (hereinafter "*CREEC*"), the Ninth Circuit restated and clarified the broad scope of standing in ADA cases involving public accommodations as it relates both to the deterrent effect doctrine and to tester standing. Plaintiff has filed 133 similar cases against hotels in the Phoenix area. Because the issue of standing affects all of Plaintiff's cases before the Court, the Court ordered a consolidated hearing at which the Court could consider Mr. Gastelum's standing in all his cases then pending before this Court. In addition to the Canyon Hospitality case, Mr. Gastelum had eleven other ADA complaints against hotels pending in this Court. The hearing held was noticed for ten of them.[1] After reviewing the evidence from the hearing, the Court determines that Plaintiff

---

[1] The hearing in *Gastelum v. Drury Southwest Inc.*, No. 17-cv-03626-PHX-GMS (D. Ariz. filed Oct.10, 2017) was postponed for one week at the request of the Defendant. (Doc. 39).

nevertheless fails to meet the requirements for standing in every case.  Thus, the Court grants Defendant's Motion to Dismiss and enters this Order dismissing both the Canyon Hospitality case and all other cases brought by Plaintiff that were the noticed subject of the motion hearing.

## BACKGROUND

Plaintiff Fernando Gastelum's left leg is amputated below the knee, requiring him to move around either with a prosthetic leg or the aid of a wheelchair.  He spends approximately 85% of his time in a wheelchair.  In his Complaint,[2] as it pertains to his interaction with Defendant Canyon Hospitality's hotel, Plaintiff merely alleges that "on or about August 17, 2017" "Plaintiff reviewed a 3rd party lodging website to book an ambulatory and wheelchair accessible room." (Doc. 1, pp. 15, 26, 30).  According to Plaintiff, this website did not contain sufficient information for Plaintiff to determine whether Defendant's hotel complied with the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181–89.  (Doc. 1, p. 5).  Next, Plaintiff visited Defendant's first-party website, www.gcuhotel.com, attempting to find the information that was not available on the third-party website.  Plaintiff found that the first-party website also lacked enough detail on ADA compliance.  *Id*. at p. 8.  Because he could not ascertain from the websites whether the hotel complied with the ADA, he thereafter called Defendant's hotel to inquire whether it was ADA compliant and was assured by an employee, Rena, that it was.  *Id*. at pp. 33–35.  Nevertheless, on August 18, 2017, Plaintiff visited Defendant's hotel to verify in person whether the hotel was ADA compliant and suitable for Plaintiff to stay.

In his visit to this Defendant, Plaintiff noted 22 areas where Defendant's external facilities were allegedly out of compliance with the ADA.  *Id*. at pp. 10–12.  That same day, August 18, 2017, Plaintiff filed the present lawsuit seeking injunctive relief under the ADA. (Doc. 1).  Plaintiff does not state in his Complaint how any of the failures of

---

[2] As the motion was filed in the *Canyon Hospitality* case, the Court uses facts from it as illustrative.  Should there be relevant distinctions between the cases, the Court will provide that information and cite to those cases separately.

compliance discriminate against him or his disability, but the Complaint does make the bare allegation that he "intends to book a room at the Defendant's hotel once Defendant has removed all accessibility barriers." (Doc. 1, pp. 16, 19, 30). On that same date, Plaintiff also filed a separate complaint concerning a separate hotel with virtually identical allegations. *See Gastelum v. BRE/LQ Properties LLC*, No. 17-cv-02802-PHX-DGC (D. Ariz. filed Aug. 18, 2017).

At the time of the filing of Defendant Canyon Hospitality's Motion to Dismiss, Plaintiff had, in the previous six weeks, filed over thirty-three ADA complaints against hotels in the Phoenix area alleging that he has been personally harmed by the ADA violations of those hotels. By the time the hearing was held on this matter Plaintiff acknowledged that he has filed a total of approximately 125 similar lawsuits in the District of Arizona against various hotels in the Phoenix area. At present, Plaintiff has apparently filed 133 lawsuits. He has continued to file such suits after the hearing.[3] The complaints filed in all the cases pending in front of this Court are substantially similar, boilerplate complaints. In all the complaints, Mr. Gastelum alleges the same process of checking a third-party website, then a first-party website, and finally an in-person visit. If the websites make different levels of disclosure of ADA accommodations, the complaints reflect the specific disclosures, seemingly copied and pasted from the website. *See, e.g., Gastelum v. AUM Hospitality Ventures, LLC*, No. 18-cv-0104-PHX-GMS (D. Ariz. filed Jan. 11, 2018) (Doc. 1, pp. 9–10). All of the complaints contain the same language that Mr. Gastelum "intends to book a room at the Defendant's hotel once Defendant has removed all accessibility barriers." *See, e.g., id.* at p. 4. No complaint contains further detail on Mr. Gastelum's return plans. Each complaint contains a different list of ADA barriers found on Plaintiff's inspection, though many of the same

---

[3] The cases assigned to this Court and filed after this Court set a hearing are: *Gastelum v. DHILLON Properties & Investments LLC*, No. 18-cv-01283-PHX-GMS (D. Ariz. filed April 24, 2018), *Gastelum v. Concord CS Chandler LLC*, No. 18-cv-01429-PHX-GMS (D. Ariz. filed May 9, 2018), and *Gastelum v. Chandler HG LLC*, No. 18-cv-01453-PHX-GMS (D. Ariz. filed May 11, 2018). An additional case was reassigned from a magistrate judge to this Court after the hearing: *Gastelum v. CP Buttes LLC*, No. 18-cv-00940-PHX-GMS (D. Ariz. filed March 26, 218).

barriers appear on each complaint. Thus, while details gleamed from the inspections are changed, the substance of the rest of the complaints are almost exactly the same.

Defendant Canyon Hospitality operates the Grand Canyon University Hotel in Phoenix, and moved the Court to dismiss on the grounds that Plaintiff has failed to plead the necessary requirements to establish Article III standing. (Doc. 12). In light of the questions raised by Defendant in its motion that were similar to virtually all of the cases filed by Mr. Gastelum in this Court, and the Court's obligation to sua sponte determine whether there is standing in its cases, *see Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2001), the Court held evidentiary hearings on May 4, 2018 and May 11, 2018 that pertained to all of the cases filed by Mr. Gastelum that were being heard by this Court.

Mr. Gastelum was present to testify on both occasions. Mr. Gastelum testified that he lives in Casa Grande, Arizona, approximately fifty-five miles from Phoenix, Arizona. He is 57 years old and has lived in Casa Grande all of his life. Mr. Gastelum testified that since he began to file ADA lawsuits against lodgings in the Phoenix area last year he has stayed overnight at ten hotels. He never stayed in the same hotel twice. Mr. Gastelum sued each of these ten hotels for failure to comply with the ADA.[4] He testified that he has not returned to any of the hotels with which he has settled his claims, or in which he has stayed, because they have not yet completed their compliance with all ADA standards. In addition to staying at the ten lodgings, he has paid visits within the past year to many other Phoenix area lodgings to assess whether they comply with the ADA. Inspecting hotels for ADA compliance in the company of his attorney is one of the principal reasons that he comes to Phoenix: Mr. Gastelum meets with his attorney, Mr. Peter Strojnik, in Phoenix, twice a week. Mr. Gastelum's son, Eric, who receives

---

[4] To the best of this Court's knowledge, the suits involving only one of these hotels are in front of this Court: *Gastelum v. Hilton Garden Inns Management LLC*, No. 18-cv-00820-PHX-GMS (D. Ariz. filed March 13, 2018) (Doc. 28, pp. 7, 15). The Complaint in this case (Doc. 1) contains no substantial differences in its allegations compared to the complaints filed in the cases in which Mr. Gastelum has not stayed the night and paid for a room.

compensation for the inspection of the hotels, and Mr. Strojnik himself generally accompany Mr. Gastelum to the hotels. In fact, Mr. Gastelum stated in a deposition that he usually stays in the car while Eric and Mr. Strojnik inspect the hotel.[5] *Gastelum v. Pride Hospitality*, No. 17-cv-03607-PHX-GMS (D. Ariz. filed Oct. 8, 2017) (Doc. 27, Ex. 1, p. 106:10–16). Mr. Gastelum testified that he had been given a three-ring binder prepared by his counsel Mr. Strojnik[6] which contains materials and instruction by which he can ascertain whether a lodging is in compliance with all ADA regulations. He takes the binder with him when he visits those lodgings. If the lodging is out of compliance with the ADA, Mr. Strojnik files suit on his behalf. Mr. Gastelum estimates that he visits four Phoenix-area hotels a week, usually two per day. But he generally returns to Casa Grande for the evening without staying at any of the Phoenix lodgings that he has visited. In addition to bringing suit against each of the ten lodgings at which he actually stayed during the past year, he has brought suit against more than 120 other facilities that he has visited or otherwise contacted to evaluate for ADA compliance. And as the facts of some of the cases demonstrate, the lawsuit is at least sometimes filed on the same date as Mr. Gastelum's visit. At the hearing, Mr. Gastelum testified that it was his intent and desire in bringing these suits to represent all persons with disabilities in asserting their rights to ADA compliance, and that he had a general desire to live in communities and stay at lodgings that accommodated persons with disabilities as full members of the

---

[5] "Q: Do you stay in the car during the compliance checks?

A: Most of the time, I would say, yes."

Q: And Eric gets out and —

A: Yes.

Q: And Mr. Strojnik is there sometimes as well?

A: He is there I would say 95 percent of the time."

[6] Mr. Strojnik created this binder and has, in at least two cases, requested attorney's fees for his time spent preparing the materials. *Gastelum v. Pride Hospitality*, No. 17-cv-03607-PHX-GMS (D. Ariz. filed Oct. 8, 2017) (Doc. 22, p. 7); *AUM Hospitality Ventures*, No. 18-cv-0104-PHX-GMS (Doc. 15, p. 7).

community.

As has been discussed, an examination of the Complaints in these lawsuits reveals that the Complaints are boilerplate complaints that have identical language in many particulars and are minimally tailored to accommodate the facts of the individual lodging defendant.   Mr. Gastelum has not personally paid the filing fees for any of the cases brought.   His attorney covers the filing fee.  The amount of filing fees alone paid to file the suits in the last year exceeds Mr. Gastelum's yearly household income of $44,000.[7] His wife is employed and works a regular work week from Monday to Friday.   In his deposition in the *Pride Hospitality* case, Mr. Gastelum testified that his wife of over twenty years is unaware that he is a plaintiff in ADA cases and that he frequently travels to Phoenix with his son to investigate hotels and meet with his attorney.   No. 17-cv-03607-PHX-GMS (Doc. 27, Ex. 1, pp. 26:6–27:4).

Mr. Gastelum's counsel has already settled 6 of the suits that were filed in this Court for undisclosed sums.    Mr. Gastelum is paid $350 for every case that is successfully terminated by his counsel.  *Pride Hospitality*, No. 17-cv-03607-PHX-GMS (Doc. 27, Ex. 1, pp. 173:24–174:10).   In two of the cases that are currently before this Court the parties have resolved the underlying matters but have asked the Court to award attorneys' fees to Mr. Gastelum's counsel as representing the prevailing party.    In both cases, Mr. Gastelum's counsel has quickly settled the case against the Defendants and then sought attorney's fees and costs awards of $21,291 and $12,643, respectively, without doing any substantial discovery in the case.  *Pride Hospitality*, No. 17-cv-03607-PHX-GMS (Doc. 22); *AUM Hospitality Ventures LLC*, No. 18-cv-00104-PHX-GMS (Doc. 15).

Mr. Gastelum stated that he likes to come to Phoenix to attend baseball games, and to go to karaoke bars and shopping with his wife, and meet with his attorney. Mr. Gastelum filed an evidentiary memorandum with the court, prior to the first hearing.

---

[7] The Court's filing fee is $400.00.  With 133 cases filed in under a year, the total filing cost for Mr. Gastelum equates to $53,200.

In the evidentiary memorandum he provided receipts from all of the hotels at which he has stayed and all of the sporting events he attended in Phoenix in the last year. The sporting events are for Diamondback games together with two football related events. (Doc. 28). To the extent that Mr. Gastelum attempts to suggest that he stays overnight in Phoenix when he attends Diamondbacks games, the receipts and dates of the tickets demonstrates that he does not. The dates he has stayed in lodgings in the Phoenix in the last year do not coincide with dates on which he was attending Diamondbacks games, and he provides no corroboration that he stayed with his wife on such occasions when shopping or going to karaoke with her.

Prior to the time he began initiating these lawsuits, Mr. Gastelum generally returned to Casa Grande for the night when he had business in Phoenix, or he stayed with his friend who lived in Phoenix or with his sister who lives in Mesa. He believed he had stayed at hotels in the Phoenix area approximately ten other times in his life during all of which he has resided in Casa Grande. On his family's household income—$44,000 per annum—Mr. Gastelum estimated that he would be able to stay in hotels in the Phoenix area a maximum of twelve to fifteen times per year. Mr. Gastelum stated that it would be impossible to stay at all of the approximately 125 (now 133) hotels he has sued, but he would like to stay at some.[8] He testified that he would return to and stay at any of the hotels he has sued if the alleged ADA violations were fixed.

Mr. Gastelum has never before visited Defendant Canyon Hospitality, nor has he since visited. Nor at the hearing was he able to set forth any persuasive reasons why he is likely to visit the Defendant Canyon Hospitality in the future. The Court finds that although Mr. Gastelum did visit the Defendant's facility as a tester, he did so only with the purpose of filing a lawsuit to obtain injunctive relief as a part of pattern of litigation against many Phoenix area hotels. He has offered no sufficiently persuasive reason to

---

[8] "Q: So in the past 279 days you filed about 125 lawsuits. Were you planning on actually staying at all the hotels you were visiting, at all 125 hotels?

A: That would be impossible if I'm looking at two per day. I would like to stay at one of those." (Doc. 41, p. 29:14–18).

believe that he would revisit the facility, or any other facility in the cases for which the hearing was noted, except to the extent that such a revisitation or an avowal of willingness to revisit would be necessary to maintain standing to obtain injunctive relief.

Mr. Gastelum did identify a few generalized reasons why he might want to return to other hotels he has sued, including, for example, their proximity to water parks or malls. But he offered no reasonable plans to believe that he had any specific intent or likelihood of doing so. Further, Mr. Gastelum has sued 133 hotels in the Phoenix area and avowed in doing so that he intended to book a room at each one of them once the defendant resolved its ADA issues. However, Mr. Gastelum testified that he has never stayed at a hotel more than once.

In his verified complaints Mr. Gastelum does not avow that he would actually return to any of the facilities against which he is bringing suit, only that he would "book a room" in such facilities. In none of the complaints does Mr. Gastelum allege a specific persuasive reason why he would return to the lodging he sues. Because of the volume of cases he has brought, his limited reasons for staying in Phoenix, the proximity to Casa Grande to which he easily can, and frequently does, return for his overnight stays, the evident enterprise in conjunction with his attorney to sue many hotels in the Phoenix area for ADA compliance, his personal finances, his past travel habits, and his testimony that he could not return to all hotels he has sued, the Court finds that he has failed to establish a sufficient likelihood that he would return to any of the hotels that are the defendants in the cases in which this hearing is noticed.

Based upon the above facts the Court concludes that Mr. Gastelum and his counsel Mr. Strojnik are engaged in a joint enterprise in which they are filing multiple suits against any Phoenix area lodgings that they believe to be out of compliance with the ADA in some respect or respects. They are filing such suits without reference to whether Mr. Gastelum actually had any intent to make future visits to those facilities for reasons not related to his pursuit of ADA claims against them. Given the facts of this case Mr. Gastelum has failed to establish that he would have any likelihood of revisiting these

facilities except to the extent it would be deemed necessary for him to do so to bring suit against each of the Defendants.

**DISCUSSION**

## I.  Legal Standard

Standing under Article III of the Constitution is a constitutional limitation on a court's subject matter jurisdiction and cannot be granted by statute.  *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 576–77 (1992)).  Because standing is a jurisdictional question, it is properly addressed in a Rule 12(b)(1) motion instead of a Rule 12(b)(6) motion.  *Cetacean Cmty.*, 386 F.3d at 1174.  "A district court may hear evidence and make findings of fact necessary to rule on the subject matter jurisdiction question prior to trial, if the jurisdictional facts are not intertwined with the merits."  *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987).

## II.  Analysis

The Constitution requires that litigants "who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirements imposed by Article III . . . by alleging an actual case or controversy."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  This Constitutional prerequisite of standing is so fundamental that federal courts are required to consider these issues sua sponte.  *See Bernhardt*, 279 F.3d at 868.  Three elements must be present for a Plaintiff to have standing: (1) the Plaintiff must have "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) there must be a "causal connection between the injury and the conduct complained of;" and (3) it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 560–61.  When a plaintiff seeks injunctive relief, there is an additional requirement of showing "a sufficient likelihood that [the plaintiff] will again be wronged in a similar way . . . [t]hat is, . . . a real and immediate threat of repeated injury."  *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d

- 9 -

1075, 1081 (9th Cir. 2004) (quoting *Lyons*, 461 U.S. at 111, and *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)) (internal quotations omitted). In the context of civil rights statutes, such as the ADA, courts are instructed to take a "broad view" of constitutional standing. *Doran v. 7–Eleven, Inc.*, 524 F.3d 1034, 1039–40 (9th Cir. 2008) (citing *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)).

But, Congress "cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S.811, 820 n. 3 (1997). As such, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robbins*, 136 S.Ct. 1540, 1549 (2016). Plaintiffs cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id*.

## A.    Injury-in-Fact

Although Defendant Canyon Hospitality challenges all three elements of standing, the crux of the argument is that Mr. Gastelum has not suffered an injury in fact, and thus, all other deficiencies flow from that.[9] An injury-in-fact is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Under the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, [or] facilities . . . of any place of public accommodation." 42 U.S.C. § 12182(a). Hotels are places of public accommodation. *Id*. at § 12181(7)(A).

### 1.    Actual or Imminent Injury

In the context of ADA discrimination claims, the Ninth Circuit recognizes a

---

[9] Defendant argues that because there is no injury, there can be no causation. Similarly, Defendant argues that without an injury, there is nothing to redress. (Doc. 12, pp. 8–9). These claims are derivative of the general claim that Plaintiff has not suffered an injury-in-fact. As such, the Court will only address the question of whether the Plaintiff has suffered an injury-in-fact.

deterrent effect doctrine. For the requirement that the injury be actual or imminent, "a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered 'actual injury.'" *Doran*, 524 F.3d at 1040 (quoting *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002)). The Ninth Circuit recently clarified that a plaintiff need not personally encounter a barrier in order to be injured. Instead, "[i]t is the plaintiff's 'actual knowledge' of a barrier, rather than the source of that knowledge, that is determinative." *CREEC*, 867 F.3d at 1099. Injury is imminent when a plaintiff "is threatened with harm in the future because of existing or immediately threatened non-compliance with the ADA." The ADA provides that plaintiffs need not "engage in a futile gesture if such person has actual notice that a person or organization . . . does not intend to comply with the ADA." 42 U.S.C. § 12188(a)(1). Where an individual knows of ADA violations at a public accommodation, he is not required to keep returning in order to show imminent injury. Instead, the ongoing deterrence is sufficient to satisfy the requirement of an actual and imminent injury. *Doran*, 524 F.3d at 1040 (quoting *Pickern*, 293 F.3d at 1138).

Similarly, in *CREEC*, the Court noted that the plaintiff's motivation in visiting the public accommodation is irrelevant. This so-called "tester standing" rule means that a plaintiff can visit or otherwise obtain information about a public accommodation solely for the purpose of ensuring ADA compliance and with the intent to bring a lawsuit if deficiencies are found. An ADA plaintiff has suffered an "actual" injury, even if the plaintiff had no intention or plan to visit the hotel at the time of the acquisition of knowledge of ADA noncompliance. *CREEC*, 867 F.3d at 1101–02.

Mr. Gastelum has actual knowledge of the alleged barriers, and may have even encountered some of them. And the fact that he has visited the lodgings as a tester does not negate his knowledge of or encounters with the alleged barriers. The recognition of the deterrent effect and tester standing doctrines, however, does not do away with the standing requirements necessary to obtain injunctive relief nor does it free the Plaintiff from the obligation to show injury-in-fact with respect to the discrimination alleged in the

complaint.

## 2. Injunctive Relief

A plaintiff seeking injunctive relief, as Mr. Gastelum does in each of his complaints here, must also show that there is a "real and immediate threat of repeated injury." *Lyons*, 461 U.S. at 111. An ADA plaintiff may show a real and immediate threat of injury in two ways. First, the plaintiff can show that "he intends to return to a noncompliant accommodation and is therefore likely to reencounter a discriminatory architectural barrier." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 950 (9th Cir. 2011). Or second, the plaintiff can show that the "discriminatory architectural barriers deter him from returning to a noncompliant accommodation" which he would otherwise visit in the course of his regular activities. *Id*. Even in holding that the ADA permits tester standing in *CREEC*, and the further holding that a personal encounter with an alleged barrier was not a prerequisite for standing purposes, the Ninth Circuit did not relax the requirement that the Plaintiff demonstrate real and immediate threat of repeated injury by showing a legitimate intent to visit again the public accommodation in question. In *CREEC*, the Ninth Circuit stated that "past exposure to illegal conduct does not in itself show a present case or controversy . . . the plaintiff must allege continuing, present adverse effects stemming from the defendant's actions." 867 F.3d at 1098 (quoting *Lyons*, 461 U.S. at 102) (quotation marks omitted). An ADA Plaintiff may show continuing adverse effects by showing a "defendant's failure to comply with the ADA deters her from making use of the defendant's facility." *CREEC*, 867 F.3d at 1098. But, to be deterred from making use of the defendant's facility, one must have a true desire to return to the facility but for the barriers. *See Chapman*, 631 F.3d at 949 ("Article III, however, requires a sufficient showing of likely injury in the future related to the plaintiff's disability to ensure that injunctive relief will vindicate the rights of the particular plaintiff rather than the rights of third parties."). *CREEC* shows no desire to change the clear holding in *Chapman* that a plaintiff must make a sufficient showing of likely injury in the future. *See also Pickern*, 293 F.3d at 1138 (noting, in the context of

discussing the actual and imminent injury requirement, that plaintiff has "visited Holiday's Paradise store in the past[,]. . . that he prefers to shop at Holiday markets and that he would shop at the Paradise [location] if it were accessible); *Doran*, 524 F.3d at 1040 ("As to whether Doran's injury is actual or imminent, Doran alleged that he had visited the 7-Eleven store on ten to twenty prior occasions, . . . that the store is conveniently located near his favorite fast food restaurant in Anaheim, and that he plans to visit Anaheim at least once a year on his annual trips to Disneyland."); *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1037–38 (9th Cir. 2008) ("In order to show the actual and imminent nature of her injury, then, D'Lil must demonstrate her intent to return to the Santa Barbara area and, upon her return, her desire to stay at the Best Western Encina if it is made accessible. . . . [S]he explained that her preference for staying at the Best Western Encina during future trips to Santa Barbara was based on the hotel's proximity to downtown, its accessibility from the freeway, and its amenities, including lush gardening and fresh country linen quilts.").

Both the Tenth and the Eleventh Circuit opinions cited in *CREEC* continue to hold that a tester plaintiff seeking injunctive relief must demonstrate a real and immediate threat of repeated injury. *Colorado Cross Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211–12 (10th Cir. 2014) (noting that "the fact that 'tester standing' exists under [the ADA] does not displace the general requirements of standing" and finding that a plaintiff who testified that she intends to return to a store in the mall at least six times in the next year has demonstrated a real and immediate threat of injury); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1336 (11th Cir. 2013) (finding that a tester plaintiff who had visited the defendant's store twice in the past and lived 30 miles from the store has sufficiently demonstrated a likelihood of future injury).

In determining whether a plaintiff has a future intent to visit the public accommodation at issue, factors such as "(1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's

frequency of travel near defendant" are relevant. *Harris v. Del Taco, Inc.*, 396 F.Supp.2d 1107, 1113 (C.D. Cal. 2005). But even these factors are not definitive. The *CREEC* Court emphasized that a past visit to a hotel is not necessarily sufficient to establish the likelihood of a future visit. It noted that while "[r]equiring a plaintiff to 'personally' encounter a barrier in order to obtain an injunction under Title III might screen out plaintiffs who do not in fact intend to use the facility—that is, plaintiffs for whom an injury is not actually imminent"— a requirement of past visits was both under- and over-inclusive. *CREEC*, 867 F.3d at 1099. It could be under-inclusive because "evidence of concrete travel plans would be sufficient to show that a disabled plaintiff intends to visit a facility, even if she has not travelled there in the past." *Id*. at 1100. Such a rule could also be over-inclusive because "in the absence of travel plans, a past visit might not be sufficient evidence of imminent future harm." *Id*. The *CREEC* court thus expressed confidence that making "case-by-case determinations about whether a particular plaintiff's injury is imminent is well within the competency of the district courts." 867 F.3d at 1100 (citing *Houston*, 733 F.3d at 1335–37) (using similar factors as in *Harris* to evaluate the imminence of a plaintiff's injury).

In *CREEC*, the three Plaintiffs each identified a separate hotel under common ownership at which they would stay in the future if that hotel would cease to discriminate against their disability by providing equivalent transportation to wheelchair bound patrons. By contrast, although he lives close by, Mr. Gastelum has sued over 130 lodgings in the Phoenix metropolitan area for their failure to comply with ADA requirements without specifying how it relates to his disability and without setting forth any reason why he would plan to visit that hotel again. In each of the complaints at issue here, Mr. Gastelum identically alleges that "Plaintiff intends to book a room at the Defendant's hotel once Defendant has removed all accessibility barriers, including the ones not specifically referenced herein, and has fully complied with the ADA." (Doc. 1, p. 4). But, Plaintiff cannot substitute a "formulaic recitation of the elements of a cause of action" in the place of factual allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007).   Plaintiff must provide facts that establish an intent to visit Defendant's hotel in order to have standing; Plaintiff cannot simply state the rule.   While the need to look at the specificity with which the Plaintiff has pleaded the likelihood of future visits might be less stringent had he only sued one hotel in the Phoenix area, as had the Plaintiffs in *CREEC,* the inquiry must be more exacting where he has expressed only a rote intent to "book rooms" in 133 other lodgings in the same geographic area.   Further, Mr. Gastelum's standard avowal in his verified complaints that he intends to "book a room" at each lodging is not sufficient to establish concrete injury, absent a showing that he would likely visit that hotel again (as opposed to merely booking a room) for some purpose other than maintaining his litigation against that hotel.   Avowing to a desire to "book a room," is different than avowing an intent to actually visit a hotel.

Mr. Gastelum has only visited Defendant Canyon Hospitality's hotel on the visit that gave rise to this lawsuit, and he did not stay there then.   He has not pled any facts about a specific plan to return or about why he is likely to want to stay or visit at Defendant's hotel in the future.   *Cf. D'Lil*, 538 F.3d at 1037–38.   At the evidentiary hearing, Mr. Gastelum could not remember why he had been interested in staying at the GCU Hotel.   Mr. Gastelum and his counsel Mr. Strojnik are engaged in a joint enterprise in which they are filing multiple suits against any Phoenix area lodgings that they believe to be out of compliance with the ADA in some respect or respects.   They are filing such suits without reference to whether Mr. Gastelum actually intends to actually revisit those facilities except to the extent he would be required to do so to maintain the right to pursue litigation against them.   This is insufficient to grant him standing against any of these Defendants.

Moreover, even though Mr. Gastelum likes to travel to Phoenix to attend sporting events, karaoke bars, and go shopping, there is insufficient support that Mr. Gastelum actually stays in hotels after he comes to the Phoenix area for those purposes, or that he would stay at a particular hotel or hotels again for those purposes.   Mr. Gastelum did stay at the Hilton Garden Inn, and that case is pending before this Court.   But as the

*CREEC* court noted, a past stay is not indicative of an intent to return. 867 F.3d at 1100. To accord standing allowing Plaintiff to sue Defendants when he can establish no likelihood of again visiting their facilities in the course of his normal activities other than maintaining litigation against a defendant would violate the standing principles set forth in *Raines, Spokeo,* and *Lyons.* A plaintiff must show a likelihood of future injury, *Lyons*, 461 U.S. at 111, and that alleged statutory violations exist does not give rise, on its own, to an injury. *Spokeo*, 136 S.Ct. at 1549. Nor does "booking a room" establish sufficient future concrete injury absent some likelihood that the Plaintiff would actually visit the hotel again for some non-litigation purpose. Without a showing of future injury and true deterrence from returning, the alleged ADA violations at the lodgings are mere statutory violations that do not give rise to standing in Mr. Gastelum to bring suit.

In addition, at hearing and in his motion papers Mr. Gastelum seemed to suggest that he has standing due to a broader right under the statute to stay at a hotel that does not discriminate against any person based on disability. But his desire to lodge in a hotel that provides equal access to persons of all disabilities is insufficient to provide him with standing to represent such persons' claims especially if he cannot establish a real non-litigation related reason why he is likely to stay at that particular hotel in the future. Further, as will be explained below, his Complaint does not adequately allege how he is deprived access due to the failure of the hotel to comply with ADA regulations, let alone how others with separate disabilities are denied access. It is true that in the Fair Housing context, *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) held that those who lived close to the apartment complex at issue would also have standing to sue for steering practices that deprived the neighbors of the right to the benefits of interracial associations that arise from living in integrated communities. *Id*. at 376. But *Havens Realty* further specified that such "neighborhood" standing would not extend to everyone in the city or the county. *Id*. at 377 ("It is indeed implausible to argue that petitioners' alleged acts of discrimination could have palpable effects throughout the *entire* Richmond metropolitan area. At the time relevant to this action the city of Richmond contained a population of

nearly 220,000 persons, dispersed over 37 square miles. . . . Our cases have upheld standing based on the effects of discrimination only within a 'relatively compact neighborhood[.]' . . . We have not suggested that discrimination within a single housing complex might give rise to 'distinct and palpable injury,' . . . throughout a metropolitan area.").

Even assuming that the same logic would apply to the neighborhoods in which hotels as opposed to apartment buildings are located, Mr. Gastelum lives in Casa Grande. That is not sufficiently close to any of the Defendants' hotels to suggest that Mr. Gastelum suffers a personal loss because of the proximity of his residence to the hotel that he alleges is discriminating against persons who have disabilities that he does not.[10] Thus he is unable to assert a theory of "neighborhood standing" on behalf of others with disabilities he does not have when he is not a member of a "relatively compact neighborhood" near any of these hotels and he cannot establish through facts a real likelihood to visit these hotels in the future that arises other than from his desire to bring suit against them. While this Court does not doubt the good-faith desire of Mr. Gastelum to be an advocate for the disabled, he has no standing to assert claims for disabilities that he himself does not possess, or for a failure to follow regulations that do not affect his personal ability to access the facility.

### 3. Concrete and Particularized Injury

In addition to his failure to sufficiently demonstrate a likelihood of revisiting any of the facilities that are the subject of this order, Mr. Gastelum has failed to indicate in any of the complaints how the facility constructs a barrier to his particular disability. A barrier in a public accommodation must "interfere with the plaintiff's 'full and equal enjoyment' of the facility." *Chapman*, 631 F.3d at 947 (quoting 42 U.S.C. § 12182(a)). But, "a 'barrier' will only amount to such interference if it affects the plaintiff's full and

---

[10] Even a hotel in Chandler, Arizona, a city in the southeastern part of the Phoenix metropolitan area, would be approximately thirty miles from Casa Grande. A hotel in Peoria, Arizona, a city in the northwestern part of the Phoenix metropolitan area, would be approximately sixty miles from Casa Grande.

equal enjoyment of the facility *on account of his particular disability*." *Chapman*, 631 F.3d at 947 (emphasis added). A plaintiff may show a concrete and particularized injury by "stating that he is currently deterred from attempting to gain access" to the public accommodation due to that barrier. *Doran*, 524 F.3d at 1040. Plaintiff only has standing to assert discrimination that results from the disabilities that he has. The statutory language in the ADA contains broad language that does not limit rights based on the motivation of the plaintiff. The ADA states that "[*n*]*o individual* shall be discriminated against on the basis of disability" and that "*any person* who is being subjected to discrimination on the basis of disability" may bring a lawsuit. 42 U.S.C. §§ 12182(a), 12188(a)(1) (emphasis added). But, even when the statute is read at its most permissive, it still only provides standing to anyone who is discriminated against *on the basis of disability*. *See, e.g.*, *Havens Realty*, 455 U.S. at 375 (holding that, in a case involving black and white testers for violations of the Fair Housing Act, the white testers who were not lied to regarding housing availability did not have standing to assert FHA claims). In *Chapman*, the Ninth Circuit held that the plaintiff's complaint alleging "that he is 'physically disabled,' and that he 'visited the Store' and 'encountered architectural barriers that denied him fully and equal access'" was insufficient. *Id.* at 954. Mr. Chapman attached an Accessibility Survey to his complaint which "simply identifies alleged ADA . . . violations without connecting the alleged violations to Chapman's disability, or indicating whether or not he encountered any one of them in such a way as to impair his full and equal enjoyment of the Store." *Id*. Plaintiffs "cannot satisfy the demands of Article III by alleging a bare procedural violation." *Spokeo*, 136 S.Ct. at 1550.

    As in *Chapman*, Mr. Gastelum's formulized Complaint filed in each action fails to detail how his injury is particularized to his specific disability. Mr. Gastelum's complaint "does nothing more than perform a wholesale audit of the defendant's premises." *Id*. at 955 (internal quotations omitted). The Complaint lists over twenty alleged violations of the ADA. (Doc. 1, pp. 10–11). However, this "cannot substitute for the factual

allegations required in [a] complaint to satisfy Article III's requirement of an injury-in-fact." *Chapman*, 631 F.3d at 955. Like the *Chapman* complaint, Mr. Gastelum "does not even attempt to relate the alleged violations to his disability." *Id*. Instead, this Court is left "to guess which, if any, of the alleged violations deprived him of the same full and equal access that a person who is not wheelchair bound [or who does not use prosthetics] would enjoy." *Id*. Mr. Gastelum states that these violations deterred him from booking a room at the hotel, but he does not discuss "how any of [the alleged violations] deter him from visiting the [hotel] due to his disability." *Id*. Although the specific alleged violations vary from complaint to complaint, depending on the results of the inspection by Mr. Gastelum, his son, and Mr. Strojnik, the "wholesale audit" nature of the complaint does not change. Each complaint details dozens of alleged violations without relating the violations to Mr. Gastelum's disability.

Mr. Gastelum alleges, for example, that the Defendant is noncompliant with the ADA because "[s]ome parts of the accessible routes have a cross slope greater than 1:48." (Doc. 1, p. 11). As the Supreme Court held in *Spokeo*, however, Mr. Gastelum cannot "allege a bare procedural violation, divorced from any concrete harm" and maintain standing to bring the lawsuit. 136 S.Ct. at 1549. Mr. Gastelum has not alleged that a cross slope that varies from the statutory requirements concretely impacts his ability to enjoy the public accommodation. Additionally, for example, the Complaint alleges that the "[o]utside smoking area is inaccessible," the "[p]et waste station by the pool is inaccessible," and the "[w]ashing machines have improper reach ranges." (Doc. 1, p. 11). At the evidentiary hearing, Mr. Gastelum testified that he does not smoke, he does not have a pet, and he has never done laundry at a hotel. The Complaint in *Gastelum v. CPX Phoenix Airport Gateway Opag, LLC*, No. 18-cv-00068-PHX-GMS (D. Ariz. filed Jan. 8, 2018) alleges that "[t]here is no van accessible parking space" and "[t]he shuttle is not ADA accessible." (Doc. 1, pp. 13–14). At the evidentiary hearing, Mr. Gastelum testified that he does not drive a van and has never used a shuttle from a Phoenix hotel. The same allegation about a lack of van accessible parking is contained in

the Complaint in *AUM Hospitality Ventures, LLC*, No. 8-cv-00104-PHX-GMS (Doc. 1, p. 14). Similarly, the Complaint in *Gastelum v. Kuber-Rambdas Investments, LLC*, No. 18-cv-00470-PHX-GMS (D. Ariz. filed Feb. 12, 2018) alleges that "[t]he van accessible parking space has a width less than the required minimum of 132 inches. Mr. Gastelum alleges in the *Hilton Garden Inns Management* Complaint that "[t]he area with the microwave and the mini fridge has an insufficient clear floor space for a parallel approach," "[t]he iron in the accessible guest room is located at an improper reach range over 48 inches high," "[t]he fitness center door requires a twisting of the wrist motion to open," and "[t]he guest laundry room requires a twisting of the wrist motion to open." Mr. Gastelum testified that he has only ever brought snacks to a hotel, he has never used an iron in a hotel, he has never done laundry in a hotel, and he has never used a hotel's fitness center. No. 18-cv-00820-PHX-GMS (Doc. 1, p. 15). Even assuming that the Defendant's hotel is in violation of the ADA in those regards, Mr. Gastelum cannot show that he suffers an injury due to these violations. Finally, Mr. Gastelum's prayer for relief seeks an "[i]njunctive relief order to alter Defendant's place of public accommodation to make it readily accessible to and usable by *ALL individuals with disabilities*." (Doc. 1 at p. 12) (emphasis added). It might be easier for both Mr. Gastelum and the hotel to allow a disabled person like Mr. Gastelum to assert all ADA deficiencies for all disabled persons so that such matters could theoretically be resolved in the course of one lawsuit. But, Mr. Gastelum simply does not have standing to assert discrimination for disabilities that he does not have, nor can he assert a failure to comply with regulations that do not discriminate against him. Nothing in *CREEC* implies that tester standing lessens the factual pleading requirements.

### B. Other Causes of Action

The Complaints in all of these actions also bring state law claims of negligence, negligent misrepresentation, failure to disclose, and consumer fraud. Because the Court has concluded that it does not have jurisdiction over Mr. Gastelum's ADA claim, the Court no longer has supplemental jurisdiction over the remaining state law claims.

28 U.S.C. § 1367.

## CONCLUSION

Mr. Gastelum has failed to show injury-in-fact or a likelihood of future injury, as required for injunctive relief. Mr. Gastelum's Complaint contains no detail on how the Defendant's alleged ADA violations act as a barrier and interfere with Mr. Gastelum's equal enjoyment of the accommodation. Because Mr. Gastelum has failed to show injury-in-fact, he lacks standing to pursue his claims in federal court.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss of Defendant Canyon Hospitality, LLC (Doc. 12) is **GRANTED.** The Clerk of Court is directed to terminate and enter judgment accordingly.

**IT IS FURTHER ORDERED** directing the Clerk of Court to file this Order in each of the following cases and dismiss each of them for Mr. Gastelum's lack of Article III standing and enter judgment accordingly:

1.  *Gastelum v. Brixton Metro Plaza LLC*, No. 17-cv-02903-PHX-GMS

2.  *Gastelum v. 11111 North 7th Street Property De LLC*, No. 17-cv-03017-PHX-GMS

3.  *Gastelum v. Drury Southwest Inc.*, No. 17-cv-03626-PHX-GMS

4.  *Gastelum v. Marriott Int'l Inc.*, No. 17-cv-04667-PHX-GMS

5.  *Gastelum v. CPX Phoenix Airport Gateway Opag LLC*, No. 18-cv-0068-PHX-GMS

6.  *Gastelum v. CGD Tempe L P*, No. 18-cv-00512-PHX-GMS

7.  *Gastelum v. Hilton Garden Inns Management LLC*, No. 18-cv-00820-PHX-GMS

8.  *Gastelum v. Debaca Land & Cattle LLC*, No. 18-cv-01112-PHX-GMS

**IT IS FURTHER ORDERED** that in addition to directing the Clerk of Court to file this Order, the Motions for Attorney's Fees are moot and the following cases shall remain closed.

///

1.  *Gastelum v. Pride Hospitality Inc.*, No. 17-cv-03607-PHX-GMS (Doc. 22).

2.  *Gastelum v. AUM Hospitality Ventures LLC*, No. 18-cv-00104-PHX-GMS (Doc. 15).

Dated this 25th day of May, 2018.

_____
Honorable G. Murray Snow
United States District Judge